**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000735
27-SEP-2019
08:03 AM**

NO. CAAP-15-0000735

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ASSOCIATION OF APARTMENT OWNERS OF WAIKIKI SKYLINER,
by and through its Board of Directors, Plaintiff-Appellee,
v.
FRANK EUGENE WARD, JR.; LINDA WILKS WARD; LASALLE BANK, NA.,
now known as BANK OF AMERICA, NA, as Trustee for
Merrill Lynch Mortgage Investors Trust Mortgage Loan
Asset-Backed Certificates, Series 2006-OPT1
OPTION ONE MORTGAGE CORPORATION, a California corporation,
now known as SAND CANYON CORPORATION, a California corporation,
Defendants-Appellees,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50;
DOE CORPORATIONS 1-50; DOE "NON-PROFIT" CORPORATIONS 1-50;
DOE GOVERNMENTAL UNITS 1-50; Defendants,
and
COURTNEY BROWN, Purchaser-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-2107)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

In this judicial foreclosure action, the question on
appeal is whether Purchaser-Appellant Courtney Brown (**Brown**) is
obligated to pay certain maintenance fees and charges assessed by
Plaintiff-Appellee Association of Apartment Owners of Waikiki
Skyliner (**Association**). This case involves foreclosure on the
leasehold interest for a unit located in the Waikiki Skyliner due
to the prior owners' failure to pay common element assessments.
After foreclosure was granted, Brown was the high bidder at the

foreclosure auction, but title to the unit was ultimately transferred via a quitclaim assignment of lease to Brown's nominee, Ala Wai Resources LLC (**AWR**). AWR is not a party to this appeal, and thus our decision in this appeal affects only Brown and not AWR.

The Circuit Court of the First Circuit (**circuit court**)[1] ruled that Brown and AWR were jointly and severally liable to pay the Association $13,874.70 for unpaid monthly maintenance fees and other specified charges for the period from May 6, 2013 through March 5, 2015, and $2,698.82 for costs and expenses, including reasonable attorneys' fees as set forth in its "Findings of Fact, Conclusions of Law, and Order Granting Plaintiff Association of Apartment Owners of Waikiki Skyliner's Motion for Order Directing Purchaser Ala Wai Resources, LLC to Pay Delinquent Maintenance Fees or in the Alternative the Entry of Judgment Against Ala Wai Resources LLC" (**Order Directing Fees**), filed on September 10, 2015. On the same date, the circuit court also entered a "Judgment on Order Granting Plaintiff Association of Apartment Owners of Waikiki Skyliner's Motion for Order Directing Purchaser Ala Wai Resources, LLC to Pay Delinquent Maintenance Fees or in the Alternative the Entry of Judgment Against Ala Wai Resources LLC" (**Judgment**). Brown appeals from the Order Directing Fees and the Judgment.

On appeal, Brown contends that the circuit court erred in its application of Hawaii Revised Statutes (**HRS**) § 514B-146 to this case, when it concluded that Brown was statutorily barred from disputing the amounts assessed by the Association, and by deeming Brown to have acquired title to the unit and ordering Brown to pay specified maintenance fees and charges.

For the reasons discussed below, we vacate the Order Directing Fees and the Judgment to the extent they pertain to Brown.

---

[1] The Honorable Bert I. Ayabe presided.

## I.  Background

The circuit court's findings of fact in the Order Directing Fees are not challenged on appeal and thus are binding on this court.  See Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).  Moreover, the proceedings below and relevant facts are not in dispute.

On October 4, 2010, the Association initiated this foreclosure action against, inter alia, Frank E. Ward Jr. and Linda W. Ward (collectively **the Wards**), the owners of the leasehold interest in the unit located at the condominium project Waikiki Skyliner.  The Association sought to foreclose on a lien for unpaid common assessments.  On February 17, 2012, the circuit court entered summary judgment against all defendants and in favor of the Association.  A public auction on the leasehold interest in the unit followed.

On January 23, 2013, a public auction was conducted, at which the leasehold interest of the unit was sold to Brown, or his nominee, for $10,001.00, subject to the circuit court's confirmation of the sale.  On March 7, 2013, the circuit court orally granted the Association's motion for confirmation of sale, and a corresponding order confirming sale was filed on July 24, 2013.  On November 26, 2013, an amended order confirming sale was filed by the circuit court at the request of Brown's escrow company in order to more accurately reflect the distribution of the sale proceeds.  On March 31, 2014, a second amended order confirming sale was filed by the circuit court to reflect that the fee-simple interest in the unit had been conveyed to another entity.

On June 10, 2014, the escrow company selected by Brown filed a Commissioner's Quitclaim Assignment of Lease in the Land Court, whereby the sale of the leasehold interest in the unit was closed to AWR as Brown's nominee.  The circuit court noted in its Order Directing Fees that Brown did not disclose any relationship he had with AWR and did not present any evidence that he had observed any corporate formalities with respect to the unit. The circuit court found that neither Brown nor AWR had paid any

3

amounts due to the Association other than the original auction price since the closing of the sale.

On March 18, 2015, the Association filed "Plaintiff's Motion for Order Directing Purchaser [AWR] to Pay Delinquent Maintenance Fees or in the Alternative the Entry of Judgment Against [AWR]" (**Motion to Direct Fees**). In its Motion to Direct Fees, the Association alleged that Brown's nominee, AWR, had failed to pay for maintenance fees and charges assessed since May 6, 2013, the date the Association contends -- under HRS § 514B-146(b) -- that Brown or his nominee was deemed to have acquired title in the unit and became liable to pay for the unit's share of common expenses and assessments.[2]

On September 10, 2015, the circuit court entered its Order Directing Fees in favor of the Association. In its order, the circuit court concluded, *inter alia,* that: (1) Brown and AWR were barred from disputing the amounts assessed by the Association pursuant to HRS § 514B-146(c) because neither Brown nor AWR had paid any assessments for monthly common expenses assessed by the Association since acquiring the leasehold interest in the unit; (2) Brown and AWR were further barred from disputing the amounts assessed by the Association because neither Brown nor AWR had followed the procedure for disputing the amount set forth in HRS § 514B-146(d); and (3) pursuant to HRS § 514B-146(b), Brown and AWR "are deemed to acquire title and are required to pay the share of common expenses and assessments for [the unit] beginning on May 6, 2013, which is sixty (60) days after the hearing at which [the circuit court] granted the Motion to Confirm the Sale to Brown and/or his nominee, AWR." (Emphasis added). See HRS § 514B-146(b)(2). The circuit court thus concluded that Brown and AWR were jointly and severally liable to the Association in the amount of $13,874.70 for the unpaid monthly assessments for the period from May 6, 2013 through March

---

[2] The Association sought "an Order determining that [AWR] is indebted to [the Association] for the sum of $13,874.70 for unpaid maintenance and other fees through March 5, 2015, plus reasonable attorneys' fees and costs as approved by [the circuit court], and directing payment of said sums[.]"

5, 2015, and $2,698.82 for costs and expenses, including reasonable attorneys' fees for collecting the delinquent assessments.

## II.  Discussion

### A.  HRS § 514B-146(b)

Brown argues that HRS § 514B-146(b) is inapplicable to this case because it applies to circumstances where title is obtained due to foreclosure of a mortgage, and not where foreclosure is based on a lien for unpaid common assessments, as in this case.  For the reasons discussed below, we agree and conclude that HRS § 514B-146(b), in effect at the time of the public auction on January 23, 2013, did not apply to this case and thus the circuit court erred in applying that statute to determine when Brown "acquired title" to the unit and became obligated to pay the unit's share of common expenses and assessments.

For purposes of statutory interpretation, we follow well-established principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Jaylo v. Jaylo, 125 Hawaiʻi 369, 373, 262 P.3d 245, 249 (2011) (citations omitted).  We further note that "when the language is plain and unmistakable the court is bound by the plain, clear and unambiguous language of the statute."  State v. Sylva, 61 Haw. 385, 387-88, 605 P.2d 496, 498 (1980) (citations omitted).

At the time Brown was the high bidder for the unit at the January 23, 2013 foreclosure auction,[3] HRS § 514B-146(b) stated:

---

[3]  We note there have since been various amendments to HRS § 514B-146.

5

§514B-146  Association fiscal matters; lien for assessments.

. . . .

(b)  Except as provided in subsection (g), <u>when the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit</u> <u>**as a result of foreclosure of the mortgage**</u>, the acquirer of title and the acquirer's successors and assigns shall not be liable for the share of the common expenses or assessments by the association chargeable to the unit that became due prior to the · acquisition of title to the unit by the acquirer. The unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the unit owners, including the acquirer and the acquirer's successors and assigns.  <u>The mortgagee of record or other purchaser of the unit shall be deemed to acquire title and shall be required to pay the unit's share of common expenses and assessments beginning</u>:
(1)  Thirty-six days after the order confirming the sale to the purchaser has been filed with the court;
(2)  Sixty days after the hearing at which the court grants the motion to confirm the sale to the purchaser;
(3)  Thirty days after the public sale in a nonjudicial power of sale foreclosure conducted pursuant to chapter 667; or
(4)  Upon the recording of the instrument of conveyance;
whichever occurs first; provided that the mortgagee of record or other purchaser of the unit shall not be·deemed to acquire title under paragraph (1), (2), or (3), if transfer of title is delayed past the thirty-six days specified in paragraph (1), the sixty days specified in paragraph (2), or the thirty days specified in paragraph (3), when a person who appears at the hearing on the motion or a party to the foreclosure action requests reconsideration of the motion or order to confirm sale, objects to the form of the proposed order to confirm sale, appeals the decision of the court to grant the motion to confirm sale, or the debtor or mortgagor declares bankruptcy or is involuntarily placed into bankruptcy. In any such case, the mortgagee of record or other purchaser of the unit shall be deemed to acquire title upon recordation of the instrument of conveyance.

HRS § 514B-146(b) (Supp. 2012) (emphases added).[4]

---

[4]  HRS § 514B-146(b) starts with the phrase: "Except as provided in subsection (g)[.]"  At the time of the foreclosure auction in this case, subsection (g) provided:

(g)  Subject to this subsection, and subsections (h) and (i), the board may specially assess the amount of the unpaid regular monthly common assessments for common expenses against a person who, in a judicial or nonjudicial power of sale foreclosure, purchases a delinquent unit; provided that:
(1)  A <u>purchaser who holds a mortgage</u> on a delinquent unit that was recorded prior to the filing of a notice of lien by the association and who acquires the delinquent unit through a judicial or nonjudicial foreclosure proceeding, including purchasing the delinquent unit at a foreclosure auction, shall not be obligated to make, nor be liable for, payment of the special assessment as

provided for under this subsection; and

(2) A <u>person who subsequently purchases the delinquent unit from the mortgagee referred to in paragraph (1)</u> shall be obligated to make, and shall be liable for, payment of the special assessment provided for under this subsection; and provided further that the mortgagee or subsequent purchaser may require the association to provide at no charge a notice of the association's intent to claim lien against the delinquent unit for the amount of the special assessment, prior to the subsequent purchaser's acquisition of title to the delinquent unit. The notice shall state the amount of the special assessment, how that amount was calculated, and the legal description of the unit.

HRS § 514B-146(g) (2006) (emphasis added). The following year, effective June 25, 2013, subsection (g) was amended as follows:

(g) Subject to this subsection, and subsections (h) and (i), the board may specially assess the amount of the unpaid regular monthly common assessments for common expenses against a [person] <u>mortgagee</u> who, in a judicial or nonjudicial power of sale foreclosure, purchases a delinquent unit; provided that [~

~~(1) A purchaser who holds a mortgage on a delinquent unit that was recorded prior to the filing of a notice of lien by the association and who acquires the delinquent unit through a judicial or nonjudicial foreclosure proceeding, including purchasing the delinquent unit at a foreclosure auction, shall not be obligated to make, nor be liable for, payment of the special assessment as provided for under this subsection; and~~
~~(2) A person who subsequently purchases the delinquent unit from the mortgagee referred to in paragraph (1) shall be obligated to make, and shall be liable for, payment of the special assessment provided for under this subsection; and provided further that]~~ the mortgagee or [subsequent] <u>other</u> purchaser may require the association to provide at no charge a notice of the association's intent to claim lien against the delinquent unit for the amount of the special assessment, prior to the subsequent purchaser's acquisition of title to the delinquent unit. The notice shall state the amount of the special assessment, how that amount was calculated, and the legal description of the unit.

2013 Haw. Sess. Laws Act 196, § 1 at 629.

The applicable version of subsection (g), as well as the subsequent amendments which became effective in June 2013, are consistent with our plain reading of subsection (b), that subsection (b) applies to a foreclosure <u>of a mortgage</u>. We may consider subsequent legislative amendments to confirm our interpretation of an earlier provision. <u>See Keliipuleole v. Wilson</u>, 85 Hawai'i 217, 225, 941 P.2d 300, 308 (1997).

The plain and unambiguous language of the statute supports Brown's contention that subsection (b) was not applicable to the foreclosure in this case.  The first sentence of subsection (b) -- specifically the wording "when the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit as a result of foreclosure of the mortgage" -- limits application of subsection (b) to those who acquire title to a unit "as a result of foreclosure of [a] mortgage[.]"  We must give effect to all parts of a statute and this language is clear.  See Coon v. City and Cty. of Honolulu, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) ("It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." (internal quotation marks and citations omitted)).  Moreover, there is nothing in the rest of subsection (b) to indicate that the remaining sentences should otherwise apply to other types of foreclosures.

We rely on the plain language of HRS § 514B-146(b), but also note that the legislative history for this provision does not provide clear guidance on the question at hand.[5]  The legislative history for HRS § 514B-146(b) is extensive, and there have been multiple predecessor versions of the provision contained in HRS § 514A-90, HRS § 514-90, HRS § 514-24 and Revised Laws of Hawaii (**RLH**) § 170A-22.  The various amendments to the provision over the years do not reveal a legislative intent inconsistent with our plain reading of the applicable version of the statute.  See 2012 Haw. Sess. Laws Act 182, § 10 at 656; 2004 Haw. Sess. Laws Act 164, § 2 at 786; 2003 Haw. Sess.

---

[5]  "Even when the meaning of a law is apparent on its face, legislative history may be used to confirm the court's interpretation of a statute's plain language."  Priceline.com, Inc. v. Dir. of Taxation, 144 Hawai'i 72, 88, 436 P.3d 1155, 1171 (2019) (citation, internal quotation marks, and brackets omitted).

Laws Act 53, § 1 at 81-82; 2000 Haw. Sess. Laws Act 39, § 2 at 70-72; 1999 Haw. Sess. Laws Act 236, § 4 at 727-28; 1991 Haw. Sess. Laws Act 282, § 1 at 676; 1977 Haw. Sess. Laws Act 98, § 2 at 179-80.[6]

Based on a plain reading of subsection (b), it is inapplicable to Brown because in this foreclosure action the Association foreclosed on its lien arising from unpaid common element assessments by the Wards. This case does not involve a foreclosure of a mortgage as subsection (b) expressly contemplates.

The circuit court erred in concluding, pursuant to HRS § 514B-146(b), that Brown was "deemed to acquire title" and was "required to pay the share of common expenses and assessments for [the unit] beginning on May 6, 2013[.]"

## B. HRS § 514B-146(c) and (d)

The Association contends that regardless whether HRS § 514B-146(b) applies, the circuit court correctly concluded that Brown was statutorily barred from disputing the amounts claimed by the Association because under HRS § 514B-146(c) and (d) (2006), Brown failed to pay any assessments. We disagree.

---

[6] Committee reports related to amendments over the years sometimes have reference to foreclosures involving mortgagees, but sometimes do not provide any specific reference to the type of foreclosure involved. See S. Stand. Comm. Rep. No. 2416, in 2000 Senate Journal, at 997-98; H. Stand. Comm. Rep. No. 1277-00, in 2000 House Journal, at 1494-95; H. Stand. Comm. Rep. No. 1738, in 1999 House Journal, at 1706-07; S. Stand. Comm. Rep. No. 388, in 1999 Senate Journal, at 1097-98; S. Stand. Comm. Rep. No. 845, in 1999 Senate Journal, at 1297-98.

One committee report in 2003 states that a bill, S.B. No. 373, regarding a predecessor statute, HRS § 514A-90(b), addressed when title was acquired "pursuant to foreclosure of a lien by the association of apartment owners" and stated that "[c]urrent law does not cover the situation of a nonjudicial power of sale by an association of apartment owners for unpaid assessments of common expenses, which is addressed by this measure." S. Stand. Comm. Rep. No. 609, in 2003 Senate Journal, at 1284-85 (emphasis added). However, committee reports later in the 2003 legislative session do not indicate that amended versions of S.B. 373 involved foreclosure of a lien, but rather appear to indicate the amendments address nonjudicial foreclosure. See H. Stand. Comm. Rep. No. 972, in 2003 House Journal, at 1472-73; H. Stand. Comm. Rep. No. 1501, in 2003 House Journal, at 1652. In all versions of S.B. No. 373 in 2003, the first sentence of HRS § 514A-90(b) remained: "Except as provided in subsection (g), when the mortgagee of a mortgage of record or other purchaser of an apartment obtains title to the apartment as a result of foreclosure of the mortgage, . . . ." (Emphasis added).

The relevant versions of HRS § 514B-146(c) & (d), applicable at the time of the foreclosure auction, provided:

> [§514B-146] Association fiscal matters; lien for assessments.
>
> . . .
>
> (c) No <u>unit owner</u> shall withhold any assessment claimed by the association. A <u>unit owner</u> who disputes the amount of an assessment may request a written statement clearly indicating:
>
> (1) The amount of common expenses included in the assessment, including the due date of each amount claimed;
> (2) The amount of any penalty, late fee, lien filing fee, and any other charge included in the assessment;
> (3) The amount of attorneys' fees and costs, if any, included in the assessment;
> (4) That under Hawaii law, a unit owner has no right to withhold assessments for any reason;
> (5) That a unit owner has a right to demand mediation or arbitration to resolve disputes about the amount or validity of an association's assessment, provided the unit owner immediately pays the assessment in full and keeps assessments current; and
> (6) That payment in full of the assessment does not prevent the owner from contesting the assessment or receiving a refund of amounts not owed.
>
> Nothing in this section shall limit the rights of an <u>owner</u> to the protection of all fair debt collection procedures mandated under federal and state law.
>
> (d) A <u>unit owner</u> who pays an association the full amount claimed by the association may file in small claims court or require the association to mediate to resolve any disputes concerning the amount or validity of the association's claim. If the <u>unit owner</u> and the association are unable to resolve the dispute through mediation, either party may file for arbitration under section 514B-162; provided that a <u>unit owner</u> may only file for arbitration if all amounts claimed by the association are paid in full on or before the date of filing. If the <u>unit owner</u> fails to keep all association assessments current during the arbitration, the association may ask the arbitrator to temporarily suspend the arbitration proceedings. If the <u>unit owner</u> pays all association assessments within thirty days of the date of suspension, the <u>unit owner</u> may ask the arbitrator to recommence the arbitration proceedings. If the <u>owner</u> fails to pay all association assessments by the end of the thirty-day period, the association may ask the arbitrator to dismiss the arbitration proceedings. The <u>unit owner</u> shall be entitled to a refund of any amounts paid to the association which are not owed.

HRS § 514B-146(c), (d) (2006) (emphases added).

Brown is not precluded from disputing the Association's assessments because HRS § 514B-146(c) and (d) apply to a "unit owner", and Brown was never a unit owner.

HRS § 514B-3 (2018) defines a "unit owner" as:

> the person owning, or the persons owning jointly or in common, a unit and its appurtenant common interest; provided that to such extent and for such purposes as provided by recorded lease, including the exercise of voting rights, a lessee of a unit shall be deemed to be the unit owner.

First, we have already determined that HRS § 514B-146(b) does not apply to the foreclosure in this case. Hence, Brown cannot be "deemed to acquire title" under the provisions of that statute.

Second, the undisputed findings by the circuit court in the Order Directing Fees establish that, at the foreclosure auction, the leasehold interest in the unit was "sold to Brown, or his nominee, for $10,001.00, subject to Court confirmation[.]" The circuit court further found that, after proceedings related to court confirmation, "Premier Escrow closed the sale of [the unit] to AWR as Brown's nominee[.]" (Emphasis added). The circuit court's undisputed findings and the record establish that AWR became the owner of the leasehold interest in the unit, not Brown.

We thus hold that the circuit court erred in concluding that Brown was barred under HRS § 514B-146(c) and (d) from disputing the amounts assessed by the Association.[7]

Based on the foregoing, therefore, the circuit court erred in concluding that Brown was jointly and severally liable to the Association for all monthly common assessments that had accrued during the period from May 6, 2013 through March 5, 2015, and for the Association's costs and expenses, including reasonable attorneys' fees.[8]

---

[7] We need not address whether other aspects of HRS § 514B-146(c) and (d) are applicable to the circumstances in this case.

[8] As previously noted, our decision in this appeal does not affect the Order Directing Fees and the Judgment as they pertain to AWR.

11

### III. Conclusion

Based on the foregoing, to the extent that they pertain to Brown, we vacate the following entered by the Circuit Court of the First Circuit:

(1) the "Judgment on Order Granting Plaintiff Association of Apartment Owners of Waikiki Skyliner's Motion for Order Directing Purchaser Ala Wai Resources, LLC to Pay Delinquent Maintenance Fees or in the Alternative the Entry of Judgment Against Ala Wai Resources LLC", filed on September 10, 2015; and

(2) the "Findings of Fact, Conclusions of Law, and Order Granting Plaintiff Association of Apartment Owners of Waikiki Skyliner's Motion for Order Directing Purchaser Ala Wai Resources, LLC to Pay Delinquent Maintenance Fees or in the Alternative the Entry of Judgment Against Ala Wai Resources LLC", filed on September 10, 2015.

DATED: Honolulu, Hawai'i, September 27, 2019.

On the briefs:

Brian S. Kim,
Andrew T. Park,
for Purchaser-Appellant.

Christopher Shea Goodwin,
Robert S. Alcorn,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12